## Wilson, Appellant, *v.* Beech Creek Cannel Coal Co.

*Coal lease—Unmerchantable coal—Evidence—Burden of proof.*

Under a coal lease the lessee was to mine and ship from the premises at least three thousand tons of coal annually or to " pay for that quantity whether mined and shipped or not." The lease also provided that should the seam of coal " prove faulty in the strata or unmerchantable in its quality, the said lessee shall have the right to abandon the same, with the right to remove all the improvements by said lessee erected on or under said premises." *Held*, in an action for the rent, that the burden of proof

was on the lessee to show that the coal was unmerchantable, and that it was error to nonsuit the plaintiff because he did not prove that there was merchantable coal in reasonable quantity.

Under the lease a portion of the rent was to be applied to the payment of certain judgments on the land. *Held*, that the failure of the lessee to exercise his privilege of paying the judgments was no ground for nonsuiting the plaintiff.

Argued April 17, 1894.    Appeal, No. 192, Jan. T., 1894, by plaintiff, Isaac Wilson, from order of C. P. Clearfield Co., Dec. T., 1892, No. 173, entering judgment of nonsuit.    Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM and FELL, JJ. Reversed.

Assumpsit for royalties under coal lease.    Before KREBS, P. J.

The material portions of the lease were as follows:

" The said lessor agrees to lease and demise unto the said lessee, his heirs or assignees, all of the merchantable coal contained in that certain seam known and called the Soult or cannel seam of coal, on, under or upon that certain tract or parcel of land situate in Bradford township, county and state aforesaid; [with right of egress, etc.] . . . Reserving also the right at all reasonable times for himself, his agents or engineers, to enter the mines upon said leased premises, for the purpose of examination and inspection, to see that the conditions of this lease are complied with.

" In consideration whereof, the said lessee agrees to pay the price or sum of twelve (12) cents per gross ton for each and every ton of merchantable coal mined and sold out of said seam, to be paid for quarterly, that is to say: For all coal sold during any period of three months is to be paid for on the twentieth day of the next succeeding month, and the quantity is to be determined by the railroad scale weight over which the same passes to market, and for all coal sold for local trade, and not passing over said railroad scales, by the weight accounted for by the purchaser.

" The said lessee agrees to pay all the taxes assessed upon the improvements by him erected upon said premises, and further agrees to mine said coal by the most improved methods, making as little waste or slack as is possible in the mining, preparing, screening and shipping of said coal.

" The said lessee agrees to commence within three months from the date hereof to open a mine or mines upon above premises, or upon some other property leased, controlled or owned by said lessee in the neighborhood, that is to say, near the head of Millstone creek, and construct railroads, and such other improvements, and have all things in readiness to ship coal on or before July 1, 1888, from said section.

" It is further agreed that in the event of there being any other seam of coal above said cannel or Soult seam, which upon development proves to be three feet and upwards in thickness, and of merchantable quality, adapted to the eastern markets, the said cannel seam shall be so worked as not to destroy the seam above, and said lessee shall work said seam above paying as a royalty therefor the price of six cents per gross ton, to be paid for in the same manner as is above provided for the payment of coal mined and sold.

" It is further agreed that said lessee will advance on account of said royalty, within four months from the date hereof, the sum of five hundred dollars ($500), and each year after July 1, 1890, said lessee agrees to pay, within sixty days after the expiration of any year, the sum of two hundred and fifty dollars ($250), until July 1, 1895, said advances to be applied to the payment of two certain judgments entered to No. 429, January term, 1884, and No. 55, December term, 1886, until the same are paid and liquidated. And after July 1, 1895, said lessee agrees to mine and ship from said premises at least three thousand tons of coal annually, or pay for that quantity whether mined and shipped or not; but for all coal so paid for, which has not been mined and shipped, the said lessee shall have the right to mine and remove the same at any time thereafter, during the continuance of this lease, so that no more coal will have been paid for than has actually been mined and sold.

" It is further agreed that should said seam of coal prove faulty in the strata, or unmerchantable in its quality, so rendering it impracticable to mine or dispose of the same in reasonable quantity, the said lessee shall have the right to abandon the same, with the right to remove all the improvements by said lessee erected on or under said premises; but all advances of royalties paid for coal not mined shall be forfeited to said lessor.

" It is further agreed that the above named lessee shall have the right to assign, sublet or transfer this lease to the Beech Creek Cannel Coal Company, their assigns or successors, and such assignment shall relieve said above named lessee from all personal liability under the covenants to be performed and kept by said lessee."

The first installment of rent was paid.    This suit was brought Oct. 14, 1892, to recover the rent then due.    It did not appear that any payment had been made by the lessee on account of the judgments mentioned in the lease.    The court entered a compulsory nonsuit and subsequently refused to take it off.

*Error assigned* was above order.                          •

*S. V. Wilson, A. L. Cole* and *George M. Fulford* with him, for appellant, cited : Caldwell v. Fulton, 31 Pa. 475 ; Bostwick v. Coal Co., 129 Pa. 592 ; Buhl v. Thompson, 3 Penny. 267 ; Borland's Ap., 66 Pa. 470 ; Lazarus's Est., 145 Pa. 1.

*Thomas H. Murray, H. B. Hartswick* with him, for appellee, cited: Muhlenberg v. Henning, 116 Pa. 144; McCahan v. Wharton, 121 Pa. 424 ; Caldwell v. Fulton, 31 Pa. 476 ; Sanderson v. Scranton, 105 Pa. 469 ; R. R. v. Sanderson, 109 Pa. 583 ; Brown v. Beecher, 120 Pa. 590 ; 1 Sm. L. Cas., 8th ed. 285 ; Hubbell v. Flint, 81 Mass. 550.

OPINION BY MR. JUSTICE McCOLLUM, May 14, 1894 :

This is an appeal from the refusal of the court below to take off a compulsory nonsuit, entered because the plaintiff did not prove that it was practicable to mine merchantable coal " in reasonable quantity " from the Soult seam which he leased to the assignor of the defendant company.    The lease was made on the twenty-third of February, 1888, and the lessee was to commence operations under it within three months from its date, but he was not bound to mine and ship coal from the demised premises prior to July 1, 1895.    He agreed to advance to the lessor, " on account of royalty," five hundred dollars, within four months from the date of the lease, and to pay after July 1, 1890, two hundred and fifty dollars a year until July 1, 1895, after which time he was to mine and ship from the premises at least three

thousand tons of coal annually, or to " pay for that quantity whether mined and shipped or not." The lease was assigned to the defendant company on the fifth of May, 1888, and the first installment of rent was paid. This action was brought on the 14th of October, 1892, to recover the rent or sums then due. The plaintiff put in evidence, on the trial, the lease, the assignment of it, and the mortgage of the leasehold by the defendant company, and he testified that the rent demanded by him had not been paid. Upon this showing, unanswered, we think he was entitled to a verdict for the rent which accrued after July 1, 1890. It is obvious that the lease was obtained for the defendant company, and that it was based on the mutual understanding of the parties to it that the Soult seam contained merchantable coal in paying quantities. There is nothing in the lease to indicate that one party was better informed than the other in reference to the subject-matter of it, and there is no presumption arising from it that what appears to have been intelligent action on their part was founded upon a mutual mistake. Why then should the plaintiff be required, as a condition precedent to a recovery of the sum sued for, to show the absence of such a mistake ? If a test of the property was necessary it was the duty of the lessee to make it. This is apparent from the following clause of the lease : " It is further agreed that should said seam of coal prove faulty in the strata or unmerchantable in its quality, so rendering it impracticable to mine or dispose of the same in reasonable quantity, the said lessee shall have the right to abandon the same, with the right to remove all the improvements by said lessee erected on or under said premises, but all advances of royalty paid for coal not mined shall be forfeited to said lessor." It may be that a condition such as is described in this clause would constitute a defence to an action for the rent, but the burden of showing that it exists lies on the defendant company. It has the right to mine and dispose of the coal in the Soult seam. In the exercise of this right it may develop a condition which will relieve it from further liability under the lease, but the lessor having parted with his right to mine the leased coal is not in a position to acquire by his own efforts further information respecting the quality and quantity of it.

The provision in the lease in relation to the application of the

rent sued for to the payment of certain judgments against the lessor does not prevent the latter from maintaining this action. Under it the defendant company might have paid the rent to the owner of the judgments and relied on such payment as a sufficient answer to the plaintiff's demand. But it did not do so, and its failure to exercise its privilege in this respect furnished no warrant for turning the plaintiff out of court.

We think the cases cited by the defendant company to sustain the nonsuit are not applicable to the facts of this case.

Judgment reversed and procedendo awarded.