# Lillibridge et al., Appellants, *v.* Lackawanna Coal Company.

*Mines and mining—Lease—Exhaustion of coal—Right-of-way to other coal.*

1. A bill in equity by a lessor in a coal lease against the lessee for an accounting and a redelivery of the property, is properly dismissed, where it appears that the lease granted to the lessee all the merchantable coal "until the exhaustion thereof" with full mining rights, with a covenant by the lessee to leave pillars for surface support, and that by a supplemental agreement, the lessee, was to have the right for a valuable consideration named, to use the mine as a right-of-way for the transportation of coal from adjoining properties owned by the lessee, and the court finds as a fact that the coal is not exhausted, and that the colliery is in full operation.

2. In such a case the use of the mine as a right-of-way for the transportation of other coal of the lessee, is not limited in its duration to the life of the mining in the mine itself.

*Practice, Supreme Court—Assignments of error—Rulings on evidence—Equity practice.*

3. Assignments of error to rulings on evidence in an appeal from a decree dismissing a bill in equity, will not be considered, where no exceptions to such rulings appear as having been filed after the entry of the decree nisi, so that they might be passed upon by the court in banc, as required by Equity Rule No. 64.

Argued Feb. 24, 1919. Appeal, No. 192, Jan. T., 1919, by plaintiffs, from decree of C. P. Lackawanna Co., Oct. T., 1916, No. 17, dismissing bill in equity in case of Sarah C. Lillibridge et al., Trustee for John Lillibridge and Levi B. Lillibridge, Committee in Lunacy for Lucilla A. Lillibridge, v. Lackawanna Coal Co. Before BROWN, C. J., STEWART, MOSCHZISKER, FRAZER and KEPHART, JJ. Affirmed.

Bill in equity for discovery, accounting and a redelivery of leased premises. Before NEWCOMB, J.

The court entered a decree dismissing the bill. Plaintiffs appealed.

*Errors assigned,* among others, were (1-6) in excluding certain offers of evidence, setting forth the offers, objections and rulings, but not disclosing any exceptions to the rulings filed after the entry of the decree nisi; (7-43) in overruling various exceptions to the court's findings of fact and conclusions of law; (44) the decree nisi; and (45) final decree dismissing the bill.

*George D. Taylor,* with him *Cornelius Comegys* and *William L. Houck,* for appellants.—The lease granted a fee determinable by the exhaustion of the coal.

The word "exhaustion" is qualified and defined by the language "under the terms of this indenture," which must mean "in accordance with" such terms; but the terms of the lease contained the provision that certain coal shall not be mined.

While the grant is admitted to operate as a conveyance of coal in place, it does not operate as a conveyance of all the coal. The legal effect of the words above quoted from the seventh paragraph of the grant, is to "except" from the grant a reasonable amount of coal in pillars as support for the surface; and the "reasonable amount of coal" provided for by the grant is a thing "excepted" from the general operation of the grant.

An "exception" in a grant of real estate, is not required to be of any definite divided part of the thing included in the general terms of the grant. It may be of an undivided interest, to be measured and ascertained at a later time by any reasonable available means of ascertainment: Weakland v. Cunningham, 3 Sadler 519; Huss v. Jacobs, 210 Pa. 145; Sheffield Water Co. v. Elk Tanning Co., 225 Pa. 614; Hollenback Coal Co. v. Lehigh, etc., Coal Co., 219 Pa. 124; First Methodist Episcopal Church v. Old Columbia Public Ground Co., 103 Pa. 608; Wusthoff v. Dracourt, 3 Watts 240; Slegel v. Lauer, 148 Pa. 236; McCalla's Est., 16 Pa. Superior Ct. 202.

The legal title to the pillar coal was at all times in the appellants and their predecessors in title, and when the

pillar coal was set apart and definitely identified, and left standing in place, the title of the appellants and their predecessors in title therein became both complete and exclusive, without any further act on their part: Webber v. Vogel, 189 Pa. 156; Denniston v. Haddock, 200 Pa. 426; Coolbaugh v. Lehigh, etc., Coal Co., 213 Pa. 28; Gallagher v. Hicks, 216 Pa. 243.

*Henry A. Knapp* and *John P. Kelly,* with them *Reese H. Harris* and *John R. Wilson,* for appellee.—The coal in this tract, even if the pillars be left out of account, has not yet been exhausted. Exhausted does not mean three-fourths mined out, nor nearly mined out, but means entirely mined out so far as it can possibly be mined out: Hoyt v. Kingston Coal Co., 212 Pa. 205.

The appellee's right to exclusive possession under the supplemental agreement of 1918 is not determined: Lillibridge v. Lackawanna Coal Co., Ltd., 143 Pa. 293; Miles v. New York, Susquehanna & Western Coal Co., 250 Pa. 147.

OPINION BY MR. JUSTICE MOSCHZISKER, March 24, 1919:

In 1916, plaintiffs, claiming that certain coal, let by their predecessors in title to defendant, had been mined to exhaustion some time since, and, therefore, the latter's lease was at an end, filed a bill in equity praying discovery, an accounting of royalties and redelivery of the property to them, the plaintiffs. After hearing, the bill was dismissed, and this appeal followed.

The chancellor states that all prayers for relief, except the last, were abandoned, "leaving nothing but an ejectment bill"; but, he adds, "there was no contest as to jurisdiction, and the trial proceeded on the merits."

Among others, the following material facts are found: "Plaintiffs' predecessors in title were seized in fee, as tenants in common, of about forty-two acres of land, underlaid with coal, called the Lillibridge tract. By

indenture of March 24, 1883, the owners demised the coal
to defendant, with the right to mine and remove the same,
for the consideration and upon the terms mentioned be-
low.   Later, two of the lessors, who in the meantime had
succeeded to the rights of their cotenants, made a sup-
plemental agreement with defendant whereby the terms
of the original contract were modified in certain particu-
lars; this was also in form of indenture, dated February
4, 1891, [and will be referred to more at length later in
this opinion].   Defendant went into possession of the de-
mised premises under the lease, and has been mining
there ever since, accounting for and paying the royalties
reserved in conformity with the terms of the contract.

"The grant also included surface rights in three-
fourths of an acre for the site of an air shaft, subject to a
restriction as to its location; such site was selected, the
air shaft was constructed, and defendant is in possession
thereof.

"The operative words of the grant are as follows: 'For
and in consideration,' etc., 'have granted, demised, leased
and to mine let unto the said party of the second part,
its successors and assigns, all the merchantable coal, to-
gether with the sole and exclusive right to mine and re-
move the same, under the following described tract or
piece of land,' etc., 'To have and to hold the coal in and
under said land, unto the said party of the second part,
its successors and assigns, until the exhaustion thereof
under the terms of this indenture'; and the covenants
material to the issue may be summarized thus: Defend-
ants to enter upon the demised premises and mine out
all the coal recoverable by energetic mining; to pay for
the same a specified tonnage royalty; to pay for
a minimum of 15,000 tons yearly, beginning in 1884, such
minimum, however, to be effective only so long as due
prosecution of the work will yield that quantity; in lieu
of any liability for surface injury, to leave, in pillars for
surface support, such reasonable amount of coal as
should be directed by lessors; and to incur the penalty

of forfeiture for wilful default in and about the due prosecution of the mining or the payment of royalties. It is not disputed that defendant has kept and performed these covenants.

"On part of lessors, there is a covenant exempting from royalty the coal required by defendant for making steam, to an amount not out of proportion to that furnished for the same purpose by other coal lands tributary to the colliery next hereinafter mentioned, which provision is accounted for by the fact that in defendant's operation a total area of several hundred acres of coal had been united; this had been acquired in various parcels, on one of which the main hoisting shaft and breaker were located, about a hundred feet distant from the boundary of the Lillibridge. The whole thing has been, at all times, operated as a single colliery; while that was apparently in contemplation of the parties to the lease, the exigencies of transportation between the different parcels, eventually led to the modification of their contract by the supplement of 1891, before mentioned.

"By the term of this supplemental contract, 'the full and free right' was granted defendant to use 'any openings or gangways in any vein of coal now opened or to be opened upon' the demised premises, for the transportation of 'all coal and minerals that lessees may mine from any other lands leased, owned, or to be leased or owned by' lessee, together with the right to construct and lay tracks and to freely use the same for such transportation 'through any openings or gangways now opened or to be opened' thereon by lessee. This grant was made in consideration of an increased royalty and of one thousand dollars in cash, both of which were paid by defendant. Plaintiffs contend that this right-of-way must be deemed to have expired with the exhaustion of the coal in the Lillibridge, which is alleged to have occurred as early as 1914"; while defendant contends it is to last as long as any part of the colliery, which requires the free use of the passageways contracted for, is being

worked, and, further, that the coal in the Lillibridge has not yet been exhausted.

The chancellor finds that "the colliery is still in full operation" and that, in addition to the pillars left by defendant, several small parcels of coal remain "in the solid" yet to be mined from plaintiffs' land; these are referred to by name and location, the chancellor saying, as to certain of them: "The margin along the boundary adjacent to the shaft was left to secure the safety of that structure, and for this reason is intended to be left for the final operation of the colliery; when that stage will be reached is uncertain, as it depends wholly upon the rate at which the coal may be mined out of the associate parcels. Both the top split of the New County and the Dunmore are minable and are intended to be mined; the bottom split of the New County vein is thin, and the only work now in progress on the Lillibridge is prospecting work to determine whether this seam can be mined to any advantage, but there has been no cessation of the use of the mine openings for haulage-ways and transportation between the other parcels and the shaft, that user continuing to be exercised in like manner as it has been from the start."

Other findings appear, all reference to which we omit here, and shall do likewise, later in this opinion, when summarizing the chancellor's conclusions of law; not owing to any disagreement therewith, but because we deem such findings and conclusions unessential to the present determination of this case.

The chancellor concludes, on the law, that defendant has the right to hold the leased property "until the coal shall be fully mined out," saying, "there is no evidence to warrant a finding the coal so leased has been fully exhausted, or of any intention to abandon the remainder"; that "any attempt by plaintiffs to take out the pillars would be repugnant to the 'sole and exclusive' mining rights granted to defendant"; and, finally, "there is nothing either in the subject-matter or the terms of the sup-

plemental agreement to warrant the construction that the use thereby granted was limited in duration to the life of the mining in the Lillibridge."

As to this supplemental agreement and plaintiffs' rights thereunder, the chancellor further states: "On its face it purports to grant a right-of-way, so to speak, as appurtenant to the use and enjoyment of the associate tracts, and, in the absence of anything said to the contrary, the presumption is that it was to continue during the life of the estates to which it thus became attached as an accessory. Therefore, regardless of the stage of exhaustion of the coal in the Lillibridge, defendant is in lawful possession of all and singular the mine openings, etc., therein; it is entitled to the free use and enjoyment thereof so long as the occasion which gave rise to the grant shall continue to exist, and its right in that particular is exclusive." To this the chancellor adds: "Just what rights plaintiffs may eventually have in any pillars which may in the end be left in place, upon cessation of the mining and the abandonment of the operation, is a question with which this issue is not presently concerned, and any attempt to decide it at this time would be premature; but, on the facts as they now appear, no present right......of......possession is shown to be in plaintiffs." In all of which we concur.

The first six assignments of error relate to rulings on evidence. No exceptions to these rulings were filed after the entry of the decree nisi, so that they might be passed upon by the court in banc, as required by Equity Rule 64, which provides: "Exceptions may then [after the decree nisi] be filed by either party within ten days, which exceptions shall cover all objections to rulings on evidence, to findings of fact or law, or to the decree in the case." Counsel for appellants do not seem to place any particular reliance upon these faulty assignments; they will not be considered further.

The several matters suggested by the other assignments are sufficiently covered by the copious excerpts

which we have made from the opinion of the court below; we need add only that an examination of the notes of testimony has not convinced us of any substantial error in the chancellor's findings of fact, and the legal conclusions thereon, hereinbefore particularly referred to, are right in every material regard. Finally, according to the view we take of this case, as already indicated, no new questions of law are raised which call for discussion.

The faulty assignments are dismissed, the others are overruled, and the decree is affirmed at cost of appellants.