# Commercial Coal Mining Co. *v.* Big Bend Coal Mining Co., Appellant.

*Contracts — Continuing contract—Ability to perform—Compliance — Equity — Injunction—Inconvenience—Coal mining—Good faith—Drainage.*

1. Where an agreement is of a continuing character, dependent upon the continued existence of a particular thing, or the continuance of the ability of the obligor to perform, subsequent destruction or disability will excuse the obligor from compliance with the terms of the agreement, though there be no express stipulation to this effect.

2. Where a coal company owning and operating a designated mine, contracts with another coal company to furnish drainage to the other company until all the coal in the designated mine "has been worked out," the first company cannot refuse to furnish drainage until all the merchantable coal is worked out in good faith.

3. In such case, mere inconvenience, hardship and increased expense does not excuse performance, nor does the fact that some of the coal remaining in the mine designated had been allotted to another mine for mining purposes and was necessary for the maintenance of the ventilating system of the latter mine.

4. Nor can it be held that the contracting parties had in mind the continuance of the contract only until there had been removed, from the mouth of the designated mine, a tonnage equivalent to the total included within the designated mine, and that such amount had passed through it, since coal from the other mine, to which coal had been allotted, had been thus taken out.

5. Nor should the contract be cancelled because its abrogation would mean more financially to the first company than the loss of the drainage system to the other.

6. On an application for an injunction to restrain the breach of a restrictive covenant as to the use of land, the court will not take into consideration the relative inconvenience and injury to the parties.

Argued March 19, 1928.   Before FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Appeal, No. 9, March T., 1928, by defendant, from decree of C. P. Cambria Co., Dec. T., 1924, No. 1, for plaintiff on bill in equity, in case of Commercial Coal Mining Co. v. Big Bend Coal Mining Co.   Reversed.

Bill for injunction.   Before McCANN, J.
The opinion of the Supreme Court states the facts.
Decree for plaintiff.   Defendant appealed.

*Error assigned,* inter alia, was decree, quoting record.

*F. J. Hartmann,* for appellant.

*Philip N. Shettig,* for appellee.

OPINION BY MR. JUSTICE SADLER, April 9, 1928:

The Commercial Coal Mining Company is the owner of certain coal lands in Cambria County.   For purposes of convenience it allotted a portion of the property to Mine No. 3, and another part to one known as No. 4. This was the situation on August 1, 1905, when it entered into an agreement with an adjoiner, the Big Bend Coal Mining Company, which contract gives rise to the present litigation.   By its terms the latter company contracted to buy power from the former until such time as connection with some commercial line could be made, the right to then terminate the arrangement being specified.   It was further agreed that the Big Bend Company should have "the right and privilege to connect its mine with the water level heading" of the Commercial Company, so long as the former purchased electricity, but, when this ceased, then the latter

agreed to furnish drainage "through the water level heading referred to" at a fixed price based on the tonnage removed, later modified to a lump sum. "Said drainage to be furnished by the Commercial Coal Mining Company if required by the Big Bend Coal Mining Company until all of the No. 3 mine coal of the Commercial Coal Mining Company has been worked out."

When this agreement was made the No. 3 operation covered 439.7 acres of land, the remaining part owned by plaintiff being included for mining purposes within No. 4. In 1910, or thereabout, additional property was purchased, and subsequently worked with No. 3, but this need not be considered in the present proceeding, since it is only the mine as it existed on August 1, 1905, when the contract was entered into, with which we are concerned. Later, in 1918, an additional slope on newly acquired acreage, known as No. 16, was developed, and coal from it was moved through a new opening, as well as the mouth of No. 3, and through the latter the ventilating system for No. 16 was constructed. A portion of the coal land, part of No. 3 in 1905, was later allotted to the additional working, and is now used in connection therewith.

The plaintiff, claiming to have abandoned its No. 3 mine, desired to abrogate its contract with the adjoiner, and relieve itself from obligation to further furnish drainage. It filed a bill in equity praying that the contract be declared no longer enforceable, and asking that the Big Bend Company be restrained from depositing water on its property, or making use of the old drainage heading. It will be noted that the contract gave the Big Bend Company the right to terminate the agreement as to the purchasing of electric power, but the Commercial Company reserved no privilege to cease at its option from supplying drainage, so long as the consideration agreed on was paid, before the coal in No. 3 was "worked out." The learned court below

granted the relief prayed for, and from its decree this appeal was taken.

When the agreement to furnish drainage was entered into the parties contemplated the abandonment at some future time of the No. 3 mine, and the withdrawal of the privilege of passing water through it. The Commercial Company apparently had no thought of keeping intact a drainage heading for the benefit of the adjoiner, when it had removed all of the coal within the lines fixed. As in the case of all contracts, where the agreement is of a continuing character, dependent upon the continued existence of a particular thing, or the continued ability of the obligor to perform, subsequent destruction or disability will excuse the obligor from compliance with the terms of the understanding, though there be no express stipulation to this effect: Bastian v. Marienville Glass Co., 281 Pa. 313; Mosser Co. v. Cherry River B. & L. Co., 290 Pa. 67; Lovering v. Buck Mountain Coal Co., 54 Pa. 291. In the present case, the parties fixed the condition upon which all obligations should cease, as stated above.

If all of the coal in the acreage of No. 3 mine has become exhausted, the right to further drainage ceased, and the plaintiff was entitled to the decree prayed for. This is true if there remains only coal which is not merchantable (Muhlenberg v. Henning, 116 Pa. 138; McCahan v. Wharton, 121 Pa. 424; Boyer v. Fulmer, 176 Pa. 282), by which is meant such as cannot be secured which is fit for market and sale: Ellis v. Cricket Coal Co. (Iowa), 148 N. W. 887; Big Vein Pochahontas Co. v. Browning, 137 Va. 34, 127 S. E. 247. Mere inconvenience, though the working entails hardship, does not excuse a party from the performance of an absolute and unqualified undertaking to do a thing which is possible and lawful: Corona Coal & Coke Co. v. Dickinson, 261 Pa. 589; Lillibridge v. Coal Co., 264 Pa. 235; Redstone Oil Co.'s Dissolution, 207 Pa. 125. If, however, no further coal can be removed by the con-

tractor, acting in good faith, he is thereafter excused from proceeding further: Mineral Park Land Co. v. Howard, 172 Cal. 289, 156 Pac. 458, L. R. A. 1916 F, p. 1, and note, p. 10.

The court below has found that certain outcrop coal within the lines of No. 3 mine is not merchantable, and cannot be worked at an expense practicable in a business sense, and it therefore need not be removed by plaintiff, as such course could not have been within the contemplation of the parties, and with this conclusion we agree: 3 Williston on Contracts 3336. It also held that it could not have been the intention that the pillars and supports of the drainage heading must be removed before cutting off the drainage system, and manifestly this is correct. It also found that there was other mineable coal within the lines of No. 3, as it existed when the contract of 1905 was executed, which could be removed, but holds that such had been transferred or allotted to the new No. 16 mine in good faith, or was required to be kept in place for the maintenance of the ventilating system of the latter. These facts are expressly found by the court in answer to the exceptions filed by the defendant to the nisi decree entered, and counsel for appellee frankly stated on argument before us that there was coal within the lines of the original tract which could still be worked. The condition justifying the abrogation of the agreement has not, therefore, as yet arisen. All of the workable coal within the original lines of No. 3 in 1905,—not the land added thereafter,—must be exhausted, and plaintiff cannot be relieved of his obligation by transferring a portion thereof to No. 16 mine, and operating it in connection therewith. Nor can it be said to have "worked out" all of the coal when it was reserving in place a part, not for the benefit of No. 3 mine, but solely to make more convenient the mining in No. 16.

It was suggested that the contracting parties had in mind the continuance of the contract only until there

had been removed from the mine mouth a tonnage equivalent to the total included within the No. 3 territory, and that such amount had passed through it, since coal from No. 4 had been thus taken out. We cannot agree with the construction suggested, but hold that, in the absence of an agreement of the contracting parties, the marketable coal within the lines of No. 3. must be "worked out" before there can be a legal declaration of the termination of the obligations undertaken.

Nor should the contract be cancelled because its abrogation would mean more financially to the plaintiff than the loss of the drainage system to the defendant. "The general rule is that, on an application for an injunction to restrain the breach of a restrictive covenant as to the use of land, the court will not take into consideration the relative inconvenience and injury to the parties": 32 C. J. 211. "The reason is that if parties, for valuable consideration, with their eyes open, contract that a particular thing shall not be done, all that a court of equity has to do is to say by way of injunction that which the parties have already said by way of covenant, that the thing shall not be done; and in such case the injunction does nothing more than give the sanction of the process of the court to that which already is the contract between the parties. It is not, then, a question of convenience or inconvenience,—or of the amount of damage or injury,—it is the specific performance, by the court, of that bargain which the parties have made, with their eyes open, between themselves": Spilling v. Hutcheson, 111 Va. 179, 182, 68 S. E. 250, 251. For like reason, the contractor is not to be relieved of his obligation because such course would be more of a benefit to him than a detriment to the other party of the agreement.

It doubtless will occur at some future time that all available merchantable and removable coal within the original No. 3 lines has been taken out, in which event the contract obligation will terminate. The tonnage

of the removable coal may be ascertained by the chancellor from the evidence before him or. from further evidence to be taken, but, until this mineable coal is removed, plaintiff must comply with its written understanding. An order should be entered which will provide for the proper protection of the rights of the parties in case the stipulations of the agreement are subsequently shown to have been fully satisfied.

The decree of the court below is reversed, and the record is remitted for further proceedings not inconsistent with this opinion; the costs to be paid by the appellee.