Windber Construction Company, Inc. *v.* Coleman, Appellant.

650

Argued November 15, 1957. Before RHODES, P. J., WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ. (HIRT and GUNTHER, JJ., absent).

*Leland W. Walker,* with him *Walker and Kimmel,* for appellant.

*Taylor B. Coffroth,* for appellee.

OPINION BY WATKINS, J., March 18, 1958:

This is an appeal from the refusal of the court below to open a judgment entered by confession for minimum royalty under the terms of a coal mining lease.

The lease in question was not expertly drawn but was reduced to writing by the appellee and executed by both parties on December 3, 1954. It described the vein, subject to the agreement, and provided for a royalty of 50¢ per ton for coal removed and for a minimum royalty of $100 per month, payments to begin December 6, 1954.

Lessee was to "excavate, mine and remove all merchantable, strippable coal that can be practicable, economically and profitable strip-mine . . . from the tract of land above mentioned." Lessee was to carry on "his mining operations in accordance with the laws of the Commonwealth of Pennsylvania pertaining to strip-mining."

The appellant entered into possession of the land and commenced mining in January, 1955 and continued this operation until September, 1955, when he moved to an adjoining tract. All royalties due were paid up to and including coal mined in September, 1955. No royalties have been paid since and no coal mined on the tract since that date. In July, 1956, appellee entered a confession of judgment under the agreement for alleged minimum royalty due from October, 1955 to and including May of 1956 at the minimum

royalty rate of $100 per month, which together with counsel fees and costs amounted to a judgment of Eight Hundred Fifty-eight ($858) Dollars.

The only question in dispute is as to when and under what conditions the agreement and its accompanying duty to pay minimum royalty was to terminate.

Appellee claims that the agreement was not to terminate until appellant fully complied with the requirements of the Bituminous Coal Open Pit Mining Conservation Act of 1945, May 31, P. L. 1198, 52 PS §1396 .10 and .11, regarding backfilling and planting of the strip--mine area and until he did carry out the provisions of this act, possession of the land, even admitting that the coal content was exhausted, and the appellant had moved off the land, remained with the appellant and the minimum royalty payments accrued.

We cannot agree with this proposition. The clause that "the lessees shall carry on his mining operation in accordance with the laws of the Commonwealth of Pennsylvania pertaining to strip-mining", is common to mine leases and refers to mining methods and techniques. The mine laws of the Commonwealth regulating both deep and strip or open pit mining are usually based on the exercise of the police powers of the Commonwealth for the protection of the safety of the miners and the safety and welfare of the public. The Act in question here was the result of public clamor against unrestricted and unregulated open pit mining where the coal content was scooped out of great areas leaving unsightly and dangerous voids.

The act provides that the operator must register with the Department of Mines and obtain a permit for the area to be strip-mined. He must deposit with the Department of Mines a bond or a deposit of cash or securities to assure compliance with the law. The act requires that within one year after the operation is

completed, the operator will backfill the stripped area and within three years of the completion of the mining, or the abandonment of the operation, the affected area is to be planted with trees. Here, clearly is the exercise of the police powers of the Commonwealth in the interest of the public welfare and any benefit to the landowner is purely incidental.

The failure on the part of the operator to backfill or to plant the affected area would result in the forfeiture of the bond or the deposit. The operator could choose not to backfill or plant, permit the forfeiture, and this work would never be done unless performed by the Commonwealth. We cannot then assume that the minimum royalty must be paid forever. An interpretation will not be given to a contract which will produce absurd results. *Robinson v. Stover,* 320 Pa. 308, 182 A. 145 (1936).

The contention of the appellant is in accord with common usage in the mining field and in accordance with the law relating thereto. Where an agreement is entered into whereby a tract or vein is to be mined to exhaustion, as in the agreement now before us, when the vein is exhausted or all the "merchantable, strippable coal that can be practicable, economically and profitable strip-mine" has been removed, the duty to pay royalty ceases. *Commercial Coal Mining Co. v. Big Bend Coal Mining Co.,* 293 Pa. 39, 141 A. 732 (1928); *Bannan v. Graeff,* 186 Pa. 648, 40 A. 805 (1898). It is however the burden of the lessee to prove the vein is exhausted or that all merchantable, profitable coal has been removed. *Wilson v. Beech Creek Cannel Coal Co.,* 161 Pa. 499, 29 A. 100 (1894). Resolving this question is one of fact for determination by a jury.

It is a common practice to insert in a mining lease a provision for a minimum royalty or rent. Usually

the minimum is stated on an annual basis, although instalment payments are often required to be made quarterly or monthly. There are several purposes in requiring such payments, the more common being to insure a steady income to the lessor and to spur the lessee into a prompt and diligent development and operation of the property.

However, there are times when it would obviously be unjust to require the lessee to pay minimum rentals, and it is often impossible to induce a responsible miner to sign a lease requiring minimum payments unless there are certain exceptions or saving clauses. These clauses of exception assume an infinite variety of form and content and one of the most common is that no minimum payments shall accrue upon exhaustion of the marketable coal. See 28 A.L.R. 2d, page 1015.

In this agreement there is no specific provision setting forth the circumstances by which payment of the minimum royalty is excused, but an examination of the entire document leaves only one interpretation and that is that it would be excused upon the exhaustion of the marketable coal. Any other interpretation would fail to fix the time when minimum royalty payments terminate. As was said in *Bangor Peerless Slate Co. v. Bangorvein Slate Co.*, 270 Pa. 161, 113 A. 190 (1921), that in arriving at the intention of the parties concerning the meaning of an exception in a clause concerning minimum royalty "where the language is doubtful or susceptible of more than one construction, the court may consider the nature and situation of the subject-matter and the apparent purpose or object in making the contract in the form in which it was made." The courts will not place an interpretation on a lease which is not required by its terms and which will work a substantial hardship on one of the parties: *Lehigh Valley Coal Company v. Coxe Brothers & Company, Inc.*, 327 Pa. 23, 192 A. 658 (1937).

It is a general rule in the interpretation of contracts that in case of doubt or uncertainty as to the meaning of language in a lease, its provisions will be construed most strongly against the lessor and in favor of the lessee. And such a rule has a strong application here because admittedly the paper in question was drawn by the appellee: *McClintock & I. Co. v. Aetna F. Co.*, 260 Pa. 191, 103 A. 622 (1918); *Larsh v. Frank & Seder*, 347 Pa. 387, 32 A. 2d 219 (1943).

Also involved in the present case is the question of retention of possession of the leased property by appellant and whether such retention, if any there was, excluded the lessor from the use or development of the tract. If such retention existed the minimum royalty would be due the appellee for the period covered by the retention. This likewise is a question of fact to be determined by a jury.

A proceeding to open a judgment is governed by equitable principles and is addressed to the sound discretion of the court. Unless the court, in an exercise of such discretion, clearly abuses it, its action will not be disturbed on appeal. However, while a judgment should not be opened, as a general rule, upon defendant's oath alone where he is contradicted by testimony of the plaintiff, yet where there are corroborative circumstances, or circumstances from which inferences may be drawn corroborating the defendant, it is proper to open the judgment and refer the question to a jury: *Deviney v. Lynch*, 372 Pa. 570, 94 A. 2d 578 (1953). We believe this is such a case.

Although no opinion by the court below has been filed, from which we might garner the reasoning behind the court's order, on the basis of the record now before us, this Court is of the opinion that the court below clearly abused its discretion in refusing to open

the judgment and submit the questions of fact involved to a jury for determination.

The order of the court below is reversed, the rule to open the judgment is made absolute and the record remanded with a procedendo.