Abrams, Inc., *v.* Wolkov, Appellant.

Argued April 18, 1952. Before DREW, C. J., STEARNE, JONES, BELL, CHIDSEY and MUSMANNO, JJ.

reargument refused June 25, 1952.

*Sylvan M. Cohen,* with him *Irving I. Specter* and *Cohen & Cohen,* for appellant.

*Abram P. Piwosky,* with him *Sacks & Piwosky,* for appellee.

OPINION BY MR. JUSTICE MUSMANNO, May 26, 1952:

On September 11, 1951, Samuel Wolkov agreed, at an auction sale, to buy from the plaintiff an apartment building known as 2254 Bryn Mawr Avenue, for $37,300, and to make a deposit of $5600. The agreement, which was in writing, contained the following provisions: "The Buyer acknowledges that he has entered into this agreement as a result of an inspection of the above described premises made by him; that said premises is being purchased as a result of said inspection and not as a result of any advertisement, handbill or any other representation, either oral or written, made by the

Seller, any selling agent or the Louis Traiman Auction Co., and the Buyer agrees that neither the Seller nor the Louis Traiman Auction Co. shall be responsible or accountable for any error in any advertisement, hand-bill or announcement made by the Seller or the Louis Traiman Auction Co., nor for any agreement, condition, representation or stipulation, oral or written, not specifically set forth herein. . .

"This agreement contains the entire agreement between the parties; no prior agreement or representation of any kind, and no contemporaneous or subsequent oral agreement or representation and no dealing between the parties or custom shall be permitted to contradict, vary or add to the terms hereof."

After paying $2300, the defendant refused to complete the purchase, and the plaintiff sued in assumpsit for the remaining $3300 due on the forfeited deposit. The lower court entered judgment for the plaintiff, and the defendant has appealed to this Court.

The defendant contends that the plaintiff perpetrated a fraud on him and the public when it advertised that each apartment in the building contained "2 tile baths," whereas in point of fact each apartment contained only one bathroom. The plaintiff admits the auctioneer's advertisement misdescribed the apartments as containing two bathrooms instead of one, but submits this would not relieve the defendant from his contract since the error was not such a material representation as would justify rescission; and further, that the right of rescission was precluded by the exoneration and integration clauses in the agreement. The defendant replies that the misrepresentation is a material one and that the interpretation contended for by the plaintiff would be against public policy. Also that fraud vitiates the entire agreement, including the exoneration and integration clauses.

It cannot at any time be overlooked, however, in the contemplation of this entire agreement that the defendant specifically stated that he entered into the agreement as a "result of an inspection" of the premises; and it can scarcely be argued that even the most cursory inspection would not have revealed a missing bathroom.

The defendant does not claim that he cannot read or that he cannot hear, because, in addition to having the agreement before him when he signed it, it was read aloud by the auctioneer before the sale. How then can he possibly avoid the very specific and lucid provisions of the agreement?

Although admitting in writing that he did inspect the premises, he now asserts that he did not so inspect and seeks to excuse his failure in this respect by declaring that the apartments were occupied by tenants. He does not assert that any tenant denied him inspection or treated him rudely in any abortive inspection he may have attempted. We must assume, had he ventured an inspection, that some one tenant out of six would have accorded a prospective landlord the courtesy of glancing at premises he was about to buy. Nor would the effort on the part of the defendant to inspect the building have required any onerous exertion, since the sale was conducted in the very apartment house itself.

The defendant argues that inspection is a generic term and it could possibly include the interpretation of "a minute inspection of every nook and cranny of each apartment." But such a nook-and-cranny examination would not have been required to ascertain the number of bathrooms in an apartment. The defendant advances the hypothesis that if, instead of an apartment house of six apartments, this had been a large hotel containing 500 rooms, would he have been required to

48

seek admission to each of the 500 rooms? But that comparison is not analogous. It would have been sufficient in this case, as it would have been sufficient even in the 500-room hotel case, for the purchaser to include in the agreement a statement to the effect that he had not made any inspection of the premises, in which event the owner would be held to the representations in his advertisements or inducements. When one physically examines the article he is about to purchase, or asserts that he has examined it, the examination predominates over the written description, unless some technical latent object or device is involved, which, of course, is not a factor in this case at all. One who contracts to purchase a five-story building, on the strength of an advertisement which proclaims it to be a ten-story building, cannot excuse himself from his obligations under the contract, once he has seen or claims to have seen the building, by stating that he failed to count the floors.

We cannot agree with defendant's contention that the inspection clause is merely an attempt by the plaintiff to circumvent its liability for misrepresentation and therefore is against public policy. As before indicated, this was not a mere exoneration clause, for it contained the definite declaration of a fact by the defendant under no compulsion to sign the agreement if the declaration was in fact false.

The defendant relies heavily in this appeal on the cases of *LaCourse v. Kiesel,* 366 Pa. 385, 77 A. 2d 877, and *Pennsylvania Turnpike Commission v. Smith,* 350 Pa. 355, 39 A. 2d 139. But in neither of those cases did the agreement there involved include a definite declaration to the effect that the buyer acknowledged he had inspected the premises and that the purchase was not the result of any advertisement or handbill, as was true in this case.

The exoneration and integration clauses being integral parts of the agreement were supported by the same consideration which supported the entire agreement. Furthermore, by entering into contract with the plaintiff, the defendant closed the door to other prospective purchasers.

There is nothing complicated or involved about this litigation. It simply represents the case of a business man who concludes, after binding himself to a formal compact, that the investment is perhaps not as attractive as he first assumed it to be. It is unfortunate that he must forfeit a sum of money in the nature of a penalty for an error in business judgment, but there could be no order in the world of affairs unless contracts were upheld and agreements enforced in accordance with the terms voluntarily chosen and solemnly accepted. The interests of others, depending on the commitment of the promisor, always intervene and they also are entitled to an enforcement of their rights under the law.

Judgment affirmed.