Deviney *v.* Lynch, Appellant.

Argued January 13, 1953. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY and ARNOLD, JJ.

*Harry Norman Ball,* with him *Lindenmuth & Class,* for appellants.

*Albert E. Holl, Jr.,* with him *Holl, Taylor & Holl,* for appellees.

OPINION BY MR. JUSTICE JONES, February 9, 1953:

This is an appeal from the refusal of the court below to open a confessed judgment and let the defendant into a defense.

In the Fall of 1947, Frank J. Lynch, Jr., the appellant, and one Daniel J. Harty, as partners doing a hotel business under the firm name of Penn House, purchased from Stephen J. Deviney the premises at 594-596 Lancaster Avenue, Bryn Mawr, Pennsylvania, known as the Penn House, for the price of $65,000. They

paid $30,000 in cash on account of the purchase price and gave Deviney their bond dated November 7, 1947, obligating them to pay the balance of $35,000 in ten years from date with interest at the rate of four per cent per annum, payable semi-annually, secured by their purchase money mortgage of the property. Lynch bought out Harty's interest in February of 1948. Deviney, the mortgagee, died February 16, 1949. By his will, duly probated and of record in the Register's office of Philadelphia County, he appointed his son, Thomas F. Deviney, A. M. Carr and William C. A. Henry as his executors and trustees. By assignment dated July 2, 1951, and recorded in the Recorder's office of Delaware County, the executors assigned the mortgage to themselves as Deviney's trustees, the present plaintiffs.

On September 6, 1951, the trustees confessed judgment on the bond for a default consisting of the defendants' failure to exhibit receipts for the taxes due on the mortgaged property for the year 1950. The plaintiffs forthwith issued a writ of execution on the judgment and levied on the mortgaged property which was thereupon advertised for sheriff's sale. By December 1951 all taxes due on the property had been paid; and, since then, all taxes coming due have likewise been paid. No default in the payment of interest on the mortgage has ever been alleged; and, by the terms of the mortgage, the principal thereof was not due until 1957. The sheriff's sale had been postponed from time to time until May 23, 1952.

With the sheriff's sale thus impending, Lynch, on May 21st, paid to Henry the sum of $3202.37 for which Henry, as "Co-Tr. Est. S. J. Deviney, Dec'd.", gave Lynch a receipt identifying the payment as being $2500 on account of the principal debt and $702.37 on ac-

count of interest and a protest fee, $700 being the interest portion and $2.37 the protest fee. On May 23rd, the plaintiffs postponed the sheriff's sale to June 20th following. When Lynch realized that the trustees intended to proceed with the sheriff's sale on June 20th, he petitioned the court below to open the judgment and let him into a defense, alleging that his payment on May 21st of $2500 on account of the principal debt and the $700 interest was upon the express understanding with Henry that the mortgage would be reinstated, i.e., continued as being current.

The trustees filed an answer denying any understanding or promise that the mortgage was to be reinstated as in good standing and, on the contrary, averred that the purpose of the payment and receipt of $3202.37 was to induce the trustees to continue the sheriff's sale from May 23 to June 20, 1952, a period of twenty-eight days, in order that Lynch might have that additional time to refinance his indebtedness. The trustees also averred that the alleged promise to reinstate the mortgage was not supported by a consideration and that such a promise by one trustee would be an unauthorized act and therefore void.

At the hearing on the rule, Lynch and Henry each testified in support of his respective version of what had taken place on May 21st upon Lynch's payment of the $3202.37 to Henry acting for the trustees. Lynch also testified that he had expended approximately $20,-000 in specified permanent improvements to the mortgaged premises. While this latter matter has no real relevancy to the issue whether the alleged oral agreement to continue the mortgage as current was made, it has bearing on the value of the mortgage security which seemed to be of importance to the court below in discharging the rule to open the judgment.

A proceeding to open a judgment is governed by equitable principles and is addressed to the sound discretion of the court. Unless the court, in an exercise of such discretion, clearly abuses it, its action will not be disturbed on appeal: *Dearnley v. Survetnick,* 360 Pa. 572, 573, 63 A. 2d 66; *Berkowitz v. Kass,* 351 Pa. 263, 264, 40 A. 2d 691. But, as this court recognized in *Cloud v. Markle,* 186 Pa. 614, 617, 40 A. 811, ". . . while a judgment should not be opened, as a general rule, upon defendant's oath alone where he is contradicted by the testimony of the plaintiff, yet where there are corroborative circumstances, or circumstances from which inferences may be drawn corroborating the defendant, it is proper to open the judgment, and refer the question to a jury: Stockwell v. Webster, 160 Pa. 473; Clinch Val. Coal Co. v. Willing, 180 Pa. 165; Lippincott v. Whitman, 83 Pa. 244; Thomas v. Loose, 114 Pa. 35; Heiss v. Banister, 176 Pa. 337, and many other cases." Just as in the *Cloud* case, supra, so also here, "We find that we are unable to agree with the learned court below in the conclusion that the testimony failed to sustain [the defendant's] allegations. It seems to us that the testimony in support of [his] averments comes quite up to the standard required by the authorities, and that it establishes another proposition not noticed in the opinion of the court below, viz: that the parties on both sides actually carried out, at least in part, the verbal contract alleged by the defendants to have been made."

The defendant's testimony as to the alleged oral agreement of May 21st is corroborated by the undisputed documentary evidence in the case, namely, the receipt which Henry drew and gave to Lynch for the payment which he made to the trustees on that day. On the other hand, Henry's denial of the understanding to continue the mortgage as current upon the trus-

tees' receipt of Lynch's payment on account of the "principal debt" was self-impeached by his effort to impute to the receipt a meaning different than what its plain and unmistakable terms clearly imported. In other words, the receipt is consonant with the understanding testified to by Lynch and is not in accord with Henry's version that the payment of May 21st was made and accepted on account of the *judgment* debt and interest thereon.

The fact is that the receipt identified the $2500 as "part-pay't . . . a/c principal debt". The principal debt, of course, was the $35,000 for which the mortgage was security; it was not the judgment debt which included not only the principal debt but also accrued interest at *six* per cent and attorney's commissions of $1750, for a total of $37,216.67. If the $2500 part-payment was intended to be paid on account of the judgment debt, it should have been so designated. But, more significant still, the $700 payment which the receipt identified as "a/c interest" was in the exact amount of the semi-annual installment of interest, then due, on the mortgage debt ($35,000) at *four* per cent per annum, the rate specified in the mortgage. If the mortgage was not to be deemed current after the payment on May 21st (until some future default should occur), then why did Henry receive and accept for the trustees the payments made by Lynch that day on account of the *principal* debt and the exact amount of *mortgage* interest currently due? The bond was, of course, extinct, having become merged in the judgment which was confessed upon it. If it was the contemplation of the parties on May 21st that liquidation of the judgment was to be pursued, then the payments should have been made on account of the judgment to which, however, the payments bore no relation whatsoever discernible from the receipt.

Then, too, the probabilities of the situation additionally confirm the defendant's allegation that his payment to the trustees on May 21st would put the mortgage in good standing until some future default should occur. Is it likely that the defendant would have stripped himself of his cash by his substantial payment to the trustees on May 21st if all he was to gain thereby was a delay of the sheriff's sale for twenty-eight days? His loss of the mortgaged property (his valuable asset) would be no less imminent if he was compelled to fund the whole of the judgment debt ($37,216.67 with interest) by the time of the next sheriff's sale (June 20th) as the plaintiffs had theretofore insisted upon his doing. Or, is it likely, if the certain loss of his property was the prospect, that Lynch would have paid the trustees the $3202.37 which he did on May 21st? He could not have been worse off had he not paid the trustees anything more if what he had originally obligated himself to pay Deviney for the property, namely, $65,000, bore any reasonable relation to the fair worth of the property. Such value, augmented as it was by $20,000 of improvements made by the defendant, should have dispelled any fear of a deficiency judgment against Lynch had he not made the payment to the trustees on May 21st and they had gone ahead and sold him out.

As a general proposition of law, where there are two or more trustees of an estate, all of them constitute but one collective trustee and must act jointly on a matter which calls for an exercise of discretion or judgment as distinguished from a matter of a purely ministerial character: *Vandever's Appeal,* 8 W. & S. 405, 409; *Dorrance's Estate,* 333 Pa. 162, 165-166, 3 A. 2d 682. We think, however, that in circumstances such as the record in this case discloses, a court of equity (this proceeding is governed by equitable prin-

ciples) would not permit the trustees to disavow an agreement made by one of them which conferred a benefit upon the trust estate and which they failed to renounce: cf. *Philadelphia Trust Co. v. Philadelphia & Reading Coal & Iron Co.,* 139 Pa. 534, 543-544, 21 A. 70. The money Henry received from Lynch on May 21st, he covered into the trust estate, presumably to the knowledge of his co-trustees. Both as an attorney for the estate and as the concededly active trustee, it was Henry who exclusively communicated with Lynch concerning the mortgage and its servicing. According to his own admission, he was the only one of the trustees with whom Lynch ever dealt. If, therefore, a jury should find that Henry and Lynch did agree on May 21st with respect to a continuation of the mortgage, as Lynch avers, the evidence would warrant the further finding that the trust estate was bound thereby. There is as little merit in the trustees' remaining contention; the payment of $2500 in reduction of the principal debt was a valuable consideration for the agreement (if made as alleged by the defendant) to continue the mortgage as current.

The issue of fact raised in this case is both substantial and material to the rights and liabilities of the parties. A jury trial for its resolution is properly indicated.

The order of the court below is reversed at the costs of the appellees; the rule to open the judgment is made absolute and the record remanded with a procedendo, execution on the opened judgment to be stayed pending final determination of the issue to be framed.