Berger, Appellant, *v.* Pittsburgh Auto Equipment Company.

62

Argued September 27, 1956.   Before STERN, C. J., JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Leonard M. Mendelson,* with him *Mortimer B. Lesher,* for appellant.

*John K. Tabor,* with him *Stuart N. Hutchison, Jr., Aims C. Coney, Jr.,* and *Kirkpatrick, Pomeroy, Lockhart & Johnson,* for appellee.

OPINION BY MR. CHIEF JUSTICE HORACE STERN, November 27, 1956:

The principle that controls the present stage of this controversy is that a proceeding to open a judgment is

addressed to the sound discretion of the court, and unless it clearly abuses that discretion its action will not be disturbed on appeal: *Deviney v. Lynch*, 372 Pa. 570, 94 A. 2d 578.

Plaintiff, David Berger, and defendant, Pittsburgh Auto Equipment Company, entered into a written agreement whereby plaintiff leased to defendant for storage purposes a portion of the second floor of a certain property on Centre Avenue, Pittsburgh, for a term of two years commencing December 1, 1951, the tenant to have an option to renew the term for an additional two years. Defendant exercised this option and the lease was accordingly extended for two more years ending November 30, 1955. However, in October, 1954, defendant vacated the premises, whereupon plaintiff, acting under a power of attorney contained in the lease, entered a judgment by confession against defendant for the balance of the rent for the remainder of the term, together with attorney's commission, in the total sum of $3,958.50.

Defendant's petition to have the judgment opened alleged that, as plaintiff was aware, it was engaged in the sale of automobile parts, supplies and equipment, which involved the storage of weights of 300 pounds and more per square foot of flooring; that plaintiff had represented to defendant's agent prior to the execution of the lease that the floor of the demised premises, having been repaired and strengthened, was sufficiently strong to withstand the weight of the merchandise that defendant would normally store thereon; that defendant executed the lease in reliance on this material representation; that subsequently it was found that the floor was incapable of withstanding even the minimum weight of 125 pounds per square foot ordinarily required by the Building Code of the City of Pittsburgh

to make a building eligible for storage purposes. It was further alleged that defendant filed an application for a certificate of occupancy for such purposes, the application was refused unless certain extensive repairs and alterations were made, and when plaintiff refused to comply with this requirement defendant vacated the premises.

Defendant having produced witnesses in support of these averments and plaintiff in contradiction thereof, the court held that "In our opinion the only way to discover what the true facts are is to have a jury determine them."

Plaintiff's principal contention is that, since all preliminary negotiations and verbal agreements are merged in and superseded by a subsequent written contract, the lease constituted the entire agreement between the parties, and, in the absence of an averment of fraud, accident or mistake, its terms could not be added to nor subtracted from by parol evidence. This is a total misconception of what is involved in defendant's petition to open the judgment. What the petition alleges is that plaintiff made, not a contractual promise or agreement which should have been contained in the written lease and therefore could not be added to it by oral testimony, but a statement of an existing fact as to the strength of the floor for storage purposes; indeed plaintiff's witness, who negotiated the lease on his behalf, stated that he knew that the floor would sustain a weight of only 120 to 125 pounds per square foot, although he denied the making of the statement attributed to him by defendant. A misrepresentation of a material fact, even though innocently made, if relied upon by the other party as intended that it should be, confers upon the latter the right to rescind the contract when the falsity of the representa-

tion is discovered: *LaCourse v. Kiesel,* 366 Pa. 385, 390, 77 A. 2d 877, 880. The purpose of the evidence here presented by defendant was not to alter or vary the terms of the written instrument, but to rescind it in its entirety because of the alleged factual misrepresentation which induced defendant to enter into it.

Apart from this general contention, plaintiff urges two reasons why the judgment should not have been opened. The one is based upon the fact that, contemporaneously with the execution of the lease agreement, the parties signed a collateral agreement, one of the provisions of which was that "The Tenant has inspected the premises and accepts the property in its present condition." Plaintiff argues that even, therefore, if the alleged misrepresentation had been made as to the strength of the flooring, it was superseded and nullified by this admission on the part of the tenant. This undoubtedly would be a valid argument as to any condition of the property reasonably ascertainable, but only as to such conditions can it be held that the tenant was bound by this provision. Thus, in *Pennsylvania Turnpike Commission v. Smith,* 350 Pa. 355, 39 A. 2d 139, where a contract with the Turnpike Commission purported to contain information as to the subsurface conditions and the nature and approximate quantities of the material to be excavated, but stated that each bidder must acquaint himself with conditions affecting the work and that the contractor should not plead misunderstanding or deception because of such estimate of quantities or of the character of the work described in the contract, it was held that the contractor nevertheless had a right to rely upon the inaccurate statements, that the misrepresentation in reference thereto was constructive even though not actual fraud, and that the contractor could not have been expected, under the circumstances, to make borings of

his own to check on the information set forth in the contract. In *Lake v. Thompson,* 366 Pa. 352, 77 A. 2d 364, it was held that the plaintiff could rescind his contract for the purchase of a house because of certain misrepresentations that had been made by the seller as to the good condition of the heating plant, plumbing and electric wiring, the court pointing out that the actual defects in this equipment were not readily observable as the result of ordinary inspection by one not an expert. On the other hand, in *Abrams, Inc., v. Wolkov,* 371 Pa. 44, 89 A. 2d 359, it was held that where the parties entered into a written agreement in which the buyer of an apartment building acknowledged that he had entered into the agreement as the result of an inspection of the premises made by him and not as the result of any advertisement or statement by the seller, the buyer could not take advantage of a misrepresentation by the seller that each of the apartments in the building contained two bathrooms whereas in fact each contained only one, this being a fact determinable by the most casual examination.

Following the line of demarcation thus established it would seem clear that, in the present case, defendant could not have been expected, nor would it have been practically feasible for it, to make tests of the strength of the flooring, a condition which could have been ascertained only by an expert engineer. This is especially true in view of defendant's testimony that plaintiff's agent had pointed out steel beams and posts which he claimed had been recently installed for the purpose of strengthening the floor, with the further assurance that he himself had used the premises in the past for the storage of heavy furnaces and equipment.

Plaintiff's remaining contention is that, since defendant occupied the premises under the original two-year period of the lease and for almost a year of the

extended period and had paid the rent during all that time, it was estopped from justifying its removal from the premises because of plaintiff's alleged misrepresentation as to the condition of the flooring made at the time when the lease was entered into. It is true that ordinarily it is the duty of a tenant, under such circumstances, if he wishes to disaffirm the contract, to do so promptly; he cannot continue to occupy the property and pay the rent for a period of time and then claim the right to rescind the lease agreement on the ground that he was induced to enter into the contract by the misrepresentations of the lessor or his agent: *Spaulding v. Justice,* 68 Pa. Superior Ct. 133, 138, 139; *Federal Metal Bed Co. v. Alpha Sign Co.,* 289 Pa. 175, 182, 183, 137 A. 189. Here, however, defendant's testimony is to the effect that, although the tenant of the first floor of the property, Metals Protection Company, testified that the beams occasionally cracked, that they notified defendant of this fact, and that defendant thereupon shifted the loads in an attempt to remedy the situation, it was only in 1954, after the Bureau of Building Inspection had notified defendant that an occupancy permit for storage purposes was required that defendant learned, through a survey made by a professional engineer, that the weight-bearing capacity of the floor was only 109 pounds per square foot.

In our opinion the court was fully warranted in opening the judgment so that the factual questions involved in the controversy can ultimately be determined by a jury.

The order is affirmed, costs to abide the event.

---

DISSENTING OPINION BY MR. JUSTICE BELL:

I would reverse the Order of the Court below which opened a judgment, first, because it was based on a

misconception of the law, and secondly, because under the facts it constituted a manifest abuse of discretion.

Plaintiff and defendant entered into a lengthy, detailed written agreement or lease. By the terms of the lease plaintiff leased to defendant, for storage purposes, a portion of the second floor of its property on Centre Avenue, Pittsburgh, for a term of two years commencing *December 1, 1951*. The lease gave the tenant an option to renew the term for an additional two years. The lease also provided: "The tenant has inspected the premises and accepts the property in its present condition." Moreover, the tenant admitted that he actually inspected the premises prior to the lease and then stored his merchandise in and occupied the demised premises for two years. Stronger still, *the tenant exercised its option and extended the lease for two more years* ending November 30, 1955. *Sometime in 1954* defendant was notified by the Pittsburgh Bureau of Building Inspection (a) that it had never applied for, as defendant was bound to do by the terms of its lease, a permit for its occupancy and (b) that certain repairs which (under the terms of its lease) the tenant was compelled to make, would be required before the permit would be issued. Thereupon, *in October 1954,* defendant vacated the premises without giving the plaintiff any notice.

Defendant testified, sur its petition to open the judgment which was entered by default for non-payment of the rent, (1) that plaintiff's agent had represented, prior to the execution of the written lease, that the floor of the demised premises *"should* accommodate what we had stored in his classrooms . . .", and (2) that, contrary to this averment, the floor was inadequate to meet defendant's needs. Even if plaintiff's weak testimony had not been specifically contradicted by the testimony and refuted by the facts, there was neither eq-

uitable nor legal ground to justify an opening of the judgment.

In *Grubb v. Rockey,* 366 Pa. 592, 597, 79 A. 2d 255, defendant contended he was induced to enter into the written contract by an oral agreement that he should be entitled to the wheat crop which was to be harvested after the date of settlement. The Court held this evidence was inadmissible because it varied the consideration set forth in the written agreement and said (page 597) : "The modern Pennsylvania Parol Evidence Rule is well stated by Mr. Justice STEARNE in Walker v. Saricks, 360 Pa. 594, 598, 63 A. 2d 9: 'This Court said in Gianni v. R. Russell & Co., Inc., 281 Pa. 320, 323, 126 A. 791: "Where parties, without any fraud or mistake, have deliberately put their engagements in writing, the law declares the writing to be not only the best, but *the only, evidence of their agreement* : Martin v. Berens, 67 Pa. 459, 463; Irvin v. Irvin, 142 Pa. 271, 287. *All preliminary negotiations, conversations and verbal agreements are merged in and superseded by the subsequent written contract*\* . . . and unless fraud, accident or mistake be averred, the writing constitutes the agreement between the parties, *and its terms cannot be added to* nor subtracted from by parol evidence: Union Storage Co. v. Speck, 194 Pa. 126, 133; Vito v. Birkel, 209 Pa. 206, 208." ' "

The oral representation which defendant alleges induced it to enter into the written contract was, under *Grubb v. Rockey,* 366 Pa., supra, and numerous other recent decisions of this Court, merged in and superseded by the subsequent (complete) written contract between the parties and its terms cannot be added to by parol evidence. In such a case parol evidence is clearly inadmissible to vary, supersede, add to or subtract from the written contract, unless fraud, accident

---

\* Italics throughout, ours.

or mistake in omitting the representation from the written agreement is averred and proved. This rule is especially strictly applied if the alleged prior or contemporaneous oral inducing representation or promise or agreement concerns, as here, a subject which is specifically dealt with in the written contract: *Bardwell v. The Willis Company*, 375 Pa. 503, 100 A. 2d 102; *T. W. Phillips Gas and Oil Co. v. Kline*, 368 Pa. 516, 84 A. 2d 301; *Grubb v. Rockey*, 366 Pa., supra; *Walker v. Saricks*, 360 Pa. 594, 63 A. 2d 9; *Gianni v. Russell & Co., Inc.*, 281 Pa. 320, 126 A. 791; *Speier v. Michelson*, 303 Pa. 66, 154 A. 127; *O'Brien v. O'Brien*, 362 Pa. 66, 66 A. 2d 309; *Russell v. Sickles*, 306 Pa. 586, 160 A. 610.

The instant case is ruled not only by the principles firmly established by the aforesaid cases, but even more directly and specifically by *Bardwell v. The Willis Company*, 375 Pa., supra, which on its facts is almost on all fours with the instant case. In the *Bardwell* case the plaintiffs (tenants) averred that the defendant's agents falsely, intentionally and fraudulently *represented* (a) *that the premises met the standards required by the plaintiffs,* and (b) that in reliance upon such misrepresentations, the plaintiffs entered into a five year lease. The Court said (page 505): "Plaintiffs averred that they contemplated engaging in the business of bottling Hires Root Beer and informed defendant's representatives that their business required a location with 'ample water facilities for the several operations', 'large drainage facilities for the operations', 'definite electrical facilities and a switchboard for the operation' and 'heating facilities capable of quickly heating water to minimum required temperatures and of keeping said premises warm'. . . . Averment is made, however, that the defendant's agents falsely, intentionally and fraudulently represented at

the time the premises were being inspected that the facilities thereon *met the standards required by plaintiffs and that in reliance upon such representations* a five-year lease beginning May 1st, 1947, was entered into." Those representations were representations of existing facts—the representation in the instant case, to wit, "should accommodate", does not even amount to a representation of an existing fact.

Moreover, the written lease in the *Bardwell* case provided that the tenants " '. . . examined and are familiar with the condition of the premises and buildings located thereon, and that the same are received in good order and condition without warranty as to the condition or repair thereof by the first party for their intended use.' " This Court rejected the offers of inducing representations of (far stronger) existing facts because they fell within the prohibitions of the Pennsylvania Modern Parol Evidence Rule. In the instant case, Paragraph 1 of the *typewritten* rider attached to the lease recites: *"The tenant has inspected the premises and accepts the property in its present condition."* This provision certainly includes the weight-bearing capacity of the floor, and is equivalent to a statement that no warranty has been made as to the condition of the premises, or if made, has been waived. There is, in Pennsylvania, no implied warranty in a lease of land that the land or the buildings are fit for the purpose intended: *Federal Metal Bed Co. v. Alpha Sign Co.,* 289 Pa. 175, 137 A. 189; *Wood v. Carson,* 257 Pa. 522, 101 A. 811; *Levin v. Philadelphia,* 277 Pa. 560, 121 A. 331.

Since the inducing oral representation upon which the defendant so belatedly relies "concerns a subject which is specifically dealt with in the written contract" to wit, the condition of the premises, parol evi-

dence, for this reason alone, is inadmissible under all our cases.

The Court further said (in the *Bardwell* case, page 506): "Where the alleged prior or contemporaneous oral representations or agreements concern a subject which is specifically dealt with in the written contract, and the written contract covers or purports to cover the entire agreement of the parties, the law is now clearly and well settled that in the absence of fraud, accident or mistake the alleged oral representations or agreements are merged in or superseded by the subsequent written contract, and parol evidence to vary, modify or supersede the written contract is inadmissible in evidence: Phillips Gas and Oil Co. v. Kline, 368 Pa. 516, 519, 84 A. 2d 301; Grubb v. Rockey, 366 Pa. 592, 79 A. 2d 255; Walker v. Saricks, 360 Pa. 594, 63 A. 2d 9; Gianni v. Russell & Co., Inc., 281 Pa. 320, 126 A. 791; Speier v. Michelson, 303 Pa. 66, 154 A. 127; O'Brien v. O'Brien, 362 Pa. 66, 66 A. 2d 309; Russell v. Sickles, 306 Pa. 586, 160 A. 610.

"There is not the slightest doubt that if plaintiffs had merely averred the falsity of the alleged oral representations, parol evidence thereof would have been inadmissible. Does the fact that plaintiffs further averred that these oral representations were fraudulently made without averring that they were fraudulently or by accident or mistake omitted from the subsequent complete written contract suffice to make the testimony admissible? The answer to this question is 'no'; *if it were otherwise the parol evidence rule would become a mockery,* because all a party to the written contract would have to do to avoid, modify or nullify it would be to aver (and prove) that the false representations were fraudulently made.

"The Parol Evidence Rule has had a checkered career in Pennsylvania. Now that it has been well and

wisely settled we will not permit it to be evaded and undermined by such tactics. Fraudulent misrepresentations may be proved to modify or avoid a written contract if it is averred and proved that they were omitted from the (complete) written contract by fraud, accident or mistake. Cf. *Kull v. General Motors Truck Co.*, 311 Pa. 580, 586, 166 A. 562; Sterling Corp. v. Jennings, 101 Pa. Superior Ct. 291. . . .

"There are two additional reasons which bar the plaintiffs' recovery: (1) the lease provides that plaintiffs 'have examined and are familiar with the condition of the premises and buildings located thereon, and that the same are received in good order and condition without warranty as to the condition or repair thereof by the first party or for their intended use:'; . . .

"What is the use of inserting such clauses in agreements if one of the parties thereto is permitted to prove by oral testimony that he didn't examine and wasn't familiar with the premises or their condition, *or that they would not meet the standards which plaintiffs require?* . . . If plaintiffs relied on any understanding, promises, representations or agreements made prior to the execution of the written contract or lease, they should have protected themselves by incorporating in the written agreement the promises or representations upon which they now rely, and they should have omitted the provisions which they now desire to repudiate and nullify."

See also: *Lefkowitz v. Hummel Furniture Co.*, 385 Pa. 244, 122 A. 2d 802; *Furjanick Estate*, 375 Pa. 484, 491, 100 A. 2d 85; *Adams v. Frederickson*, 384 Pa. 32, 119 A. 2d 240.

In *Adams v. Frederickson*, 384 Pa., supra, the plaintiff attempted to rescind a contract, inter alia, because of alleged misrepresentations made by the defendant

relative to the profitable nature of the business, *both past* and future. In denying the plaintiff's petition, this Court said (page 35): "There are, of course, a few openings through the wall of the Parol Evidence Rule, but none of them is available to the plaintiff. In order for him to alter the specific terms of the written contract which binds him, it is not enough for him to allege fraud. *It must appear that the terms upon which he now relies were omitted from the contract by design or deception.*"

In *Speier v. Michelson*, 303 Pa., supra, plaintiff sued on a promissory note. The affidavit of defense averred that the parties were joint owners of a piece of real estate in Philadelphia which was subject to a mortgage, and that defendant *was induced* to borrow from his co-owner an amount sufficient to pay his one-half of the mortgage and to give the note in suit *by a parol agreement* that the note would be payable only out of proceeds of the sale of the real estate. The real estate had not yet been sold. The Court held that this parol evidence was inadmissible to vary or defeat the written instrument, and after quoting from *Gianni v. Russell & Co.*, 281 Pa. 320, 323, 126 A. 791 said:

". . . The contract is absolute and complete on its face, and sufficiently comprehensive to embody the aim and object of the parties. They selected a negotiable note as the means best adapted to express their respective relations to each other. When they did this, they intended it to embrace all the essential features that enter into such writing, otherwise they would have resorted to a different form of instrument. May the maker now be permitted to reduce the effective character of such instrument by an outside agreement affecting any material part of it? Here a particular fund or a certain property is set up as the source from which payment is to be made. In answering this question we hold that, un-

less there was fraud, accident, or mistake *in omitting the agreement from the writing,* the character of the instrument will not be ignored but will be given its normal effect and will control."

*O'Brien v. O'Brien,* 362 Pa., supra, is on its facts even closer to the instant case and governs it. The Court speaking through Mr. Justice, now Chief Justice, STERN, said:

". . . The question therefore presents itself:—Have complainants a right of action on their counterclaim? As far as it is based upon the alleged oral agreement of Clarence J. O'Brien that he would not, for a certain time, engage in a competing business, which agreement was allegedly made immediately prior to the signing of the agreement of dissolution, it is clear that they cannot avail themselves of any such asserted obligation on his part, for the principle enunciated in Gianni v. R. Russell & Co., Inc., 281 Pa. 320, 323, 324, 126 A. 791, 792, has become too firmly imbedded in the law of this Commonwealth to permit of a recovery on any such oral agreement. That principle is to the effect that, in the absence of any allegation of fraud, accident or mistake, 'the writing constitutes the agreement between the parties, and its terms cannot be added to nor subtracted from by parol evidence'; *the test is 'whether parties, situated as were the ones to the contract, would naturally and normally include the one in the other if it were made.* If they relate to the same subject-matter and are so interrelated that both would be executed at the same time, and in the same contract, the scope of the subsidiary agreement must be taken to be covered by the writing. This question must be determined by the court.' There can be no doubt in the present case but that the written agreement of dissolution is complete and comprehensive on

its face. It was carefully drawn and was obviously intended to cover all the terms that would naturally be included in such a contract; certainly if the parties had meant to agree that the withdrawing partner was to obligate himself, for a certain period of time, not to enter into a competitive business a covenant to that effect would have been embodied in the written agreement itself and not left to the precariousness of an oral understanding. Therefore, because of the parol evidence rule, the alleged oral agreement cannot be made the basis of the right of action asserted in the counterclaim which claimants filed in the action of assumpsit."

In *Lefkowitz v. Hummel Furniture Co.*, 385 Pa. 244, 122 A. 2d 802, what purported to be a complete written contract was executed by the parties. By its terms plaintiff undertook to prepare for defendant plans and specifications for construction of a building. Defendant sought to avoid the contract by alleging an oral promise or agreement that the plans would be completed within approximately two months thereafter. The Court held that the oral evidence was inadmissible, and after quoting several authorities, said (pages 247, 248) :

". . . The instant writing is the only evidence of their agreement and all preliminary negotiations were merged in and superseded by it. 'Any parol agreement that subjects the obligation on the instrument to any condition or contingency, whether in person, time or amount, is ineffective, and the instrument is unconditional, unless fraud, accident, or mistake was the means through which the instrument was procured': Speier v. Michelson, 303 Pa. 66, 72, 154 A. 127.

"Nor can defendant be sustained in its contention that it was error to enter judgment on the pleadings.

*The parol evidence rule is not one of evidence, but of substantive law*: O'Brien v. O'Brien, 362 Pa. 66, 72, 66 A. 2d 309. . . .

"Situated as these parties were, they would naturally and normally include in the written contract any promise as to definite time for completion of the plans. This is the test (Gianni v. R. Russell & Co., Inc., 281 Pa. 320, 323, 324, 126 A. 791), and defendant's allegations do not meet it. The oral and written agreements relate to the same subject matter and are so interrelated that both would be executed at the same time in the same contract, so that the subject of the oral agreement must be taken to have been covered by the writing. See Gianni v. R. Russell & Co., Inc., 281 Pa. 320, 324, 126 A. 791."

The aforesaid cases clearly establish that where a complete, or what purports to be a complete written agreement is executed by the parties, prior or contemporaneous oral inducing representations or promises or agreements are inadmissible in evidence (in the absence of fraud, accident or mistake) to vary, contradict, add to, subtract from or nullify the written agreement—(1) *if the alleged oral representations or promises or agreements concern a subject which is specifically dealt with in the written contract, or* (2)—as aptly expressed by Chief Justice STERN—*where "parties, situated as were the ones to the contract, would naturally and normally include the one (i.e. oral representation or promise or agreement) in the other (i.e. the written contract) if it were made"*.

The cases cited by the majority to support the admission of parol evidence in this case are clearly distinguishable. In *La Course v. Kiesel*, 366 Pa. 385, 77 A. 2d 877, defendants engaged an auctioneer to act as their agent in selling their property. The auctioneer

prepared a handbill advertising the property which stated, inter alia: " '. . . also *splendid for apartments* which would bring in a handsome income . . . .' " This handbill was read to prospective bidders by the auctioneer at the auction sale held on the premises. *After the property was sold at auction*—subject to those representations—plaintiffs signed a *form* agreement of sale which contained a clause stating that the property was sold subject to " '. . . all existing restrictions, . . . zoning regulations, and, ordinances, statutes and regulations . . . .' " Thereafter, the plaintiffs learned that the zoning restrictions prohibited the use of the property other than as a single residence, and rescinded the purchase. Under these facts, the Court properly allowed plaintiffs to rescind the contract.

In *Lake v. Thompson,* 366 Pa. 352, 77 A. 2d 364, the alleged oral representations were not covered by the written agreement and the *Parol Evidence Rule was not even discussed by the Court* in its opinion; obviously, therefore, that decision fails to support the majority's position in the instant case. *Pennsylvaia Turnpike Commission v. Smith,* 350 Pa. 355, 39 A. 2d 139, is, as a reading of it will demonstrate, sui generis.

We repeat, none of these cases relied upon by the majority support its opinion.

It is my firm conviction that to admit parol evidence of "oral representations or promises or agreements or inducing statements" of an existing fact, viz., the strength of the flooring, in order to add to or alter or void a complete written agreement which recites, inter alia, that "The tenant has inspected the premises and accepts the property in its present condition", erodes and violates the modern Pennsylvania Parol Evidence Rule and will open wide the door to a return to the confusion and chaos of the pre-*"Gianni-Russell"*

era. For these reasons, I would reverse the Order of the Court below.

There is an additional reason why this judgment should not be opened. The evidence highlights the weakness of defendant's case—equitably and legally—and demonstrates that the Order opening the judgment was a manifest abuse of discretion. Prior to leasing the premises, Mr. A. H. Berger (plaintiff's son) conducted Mr. R. E. Smith (defendant's superintendent) through the building. Berger testifed that he told Smith that Smith should make a thorough inspection of the premises and then decide whether or not it would be suitable for his needs. Smith admits he made a thorough inspection of the premises. Smith then sent a letter to the plaintiff *in which he set forth the repairs needed to put the premises in proper condition for the defendant's use.* It is highly significant that Smith's letter made no mention of the weight-bearing capacity of the floor.

Defendant's case is further weakened and equitably destroyed by its letter exercising its option to extend the term of the lease for another two years, after it had been in possession approximately eighteen (18) months. During this eighteen months occupancy, defendant had ample opportunity to determine for itself the weight-bearing capacity of the floor and whether the premises met its requirements. It was only after the defendant received notice from the Pittsburgh Bureau of Building Inspection that a permit for its occupancy had never been applied for and that it would have to make certain repairs—both of which defendant was bound to do by its lease—that the defendant determined that the floor's weight-bearing capacity was inadequate to meet its needs and vacated the premises without giving the plaintiff any notice. Defendant's

actions speak far louder than its words! But even if defendant's actions did not belie its words, its words would not suffice to justify opening of the judgment. Defendant bases its entire claim to equitable relief on the alleged oral representation that the floor of the demised premises "should accommodate what we had stored in his classrooms". Even if this testimony had not been specifically contradicted by plaintiff and refuted by defendant's evidence, it does not constitute an averment of an existing fact nor under the authorities is it sufficient to justify an opening of the judgment.

In *Morrisville Shopping Center, Inc. v. Sun Ray Drug Co.,* 381 Pa. 576, 581, 112 A. 2d 183, the Court said: " 'A petition to open a judgment by default is addressed to the sound discretion of the Court below and is essentially an equitable proceeding ruled by equitable principles; and the decision of the lower Court will be reversed on appeal only when there has been a clear or manifest abuse of discretion: Downes v. Hodin & Kornfeld, 377 Pa. 208, 104 A. 2d 495, and cases cited therein': McCune v. Gross, 377 Pa. 360, 363, 105 A. 2d 367." The testimony in the present case falls far short of the clear, precise and convincing evidence which is required to move the conscience of a Chancellor to grant equitable relief: *Nissenbaum v. Farley,* 380 Pa. 257, 110 A. 2d 230; *Exchange Bank & Trust Co., Trustee, v. Bartley,* 350 Pa. 585, 39 A. 2d 833.

I am convinced that there has been a clear or manifest abuse of discretion in opening the judgment and for this additional reason I would reverse the Order of the lower Court.

Mr. Justice MUSMANNO joins in this dissenting opinion.