**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-2862
_____

DEVON DRIVE LIONVILLE, LP; NORTH CHARLOTTE ROAD POTTSTOWN, LP;
MAIN STREET PECKVILLE, LP; RHOADS AVENUE NEWTOWN SQUARE, LP;
JOHN M. SHEA; GEORGE SPAEDER,
Appellants

v.

PARKE BANCORP, INC; PARKE BANK; VITO S. PANTILIONE; RALPH GALLO
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-15-cv-03435)
District Judge: Honorable Mitchell S. Goldberg
_____

Argued June 11, 2019

Before: JORDAN, BIBAS, and NYGAARD, *Circuit Judges*

(Filed: October 22, 2019)

Kevin F. Berry                [ARGUED]
Joseph E. Vaughan
O'Hagan Meyer
100 North 18th Street
Two Logan Square, Suite 700
Philadelphia, PA 19103
        *Counsel for Appellants*

David L. Braverman            [ARGUED]
Benjamin A. Garber
Peter J. Leyh
Braverman Kaskey

1650 Market Street
One Liberty Place, 56th Floor
Philadelphia, PA 19103
        *Counsel for Appellees*

_____

OPINION[*]

_____

BIBAS, *Circuit Judge*.

Those who agree to deceive the government may find themselves deceived. The parties here were in real estate together. Their business relationship was, to put it mildly, complicated. They cheated and lied to one another. But they were all in cahoots, signing sham agreements to evade regulatory scrutiny.

After their relationship collapsed, they dashed into state and then federal courts, seeking relief. Appellants lost at both levels and now appeal the District Court's dismissal. But their claims are either precluded or meritless.

Appellants Rhoads's and Shea's claims are precluded. They raise the same fraud claims in federal court that they have already raised and lost in state courts.

And the other appellants' claims are meritless. Pottstown, Peckville, Lionville, and Spaeder cannot show that Parke Bank's fraud proximately caused their injuries; because their only theory hinges on the actions of independent, intervening third parties, the alleged injury is too remote from the fraud. So we will affirm.

---

[*] This disposition is not an opinion of the full Court and, under I.O.P. 5.7, is not binding precedent.

# I. BACKGROUND

## A. Facts

Because the District Court granted Parke Bank's motion to dismiss, we take appellants' allegations as true and draw all reasonable inferences in their favor. Many years ago, George Spaeder and Bruce Earle got into the real-estate business together. They set up four limited partnerships to run their business: North Charlotte Road Pottstown, LP; Main Street Peckville, LP; Devon Drive Lionville, LP; and Rhoads Avenue Newtown Square, LP. Spaeder and Earle had distinct roles. Spaeder managed the partnerships' day-to-day operations; Earle held their purse strings and controlled their books and records. The partnerships got financing from Parke Bank and a business partner named John Shea. As we explain below, the business eventually collapsed.

1. *Pottstown, Peckville, and Lionville*. To help launch the business, three of the partnerships (Pottstown, Peckville, and Lionville) took out large loans from Parke Bank. These partnerships were separate legal entities, so their assets and ownership were separate as well. But Parke Bank and Earle treated them as one giant "piggy bank." App. 886, 1982.

Parke Bank commingled the partnerships' funds and cross-collateralized the loans to make bad loans look better. And it levied sham fees against the partnerships to evade regulatory scrutiny.

Earle sloshed money around without Spaeder's approval and diverted funds to his personal company and account. And he made the bank honor forged or unsigned checks to send money to his personal company.

3

2. *Spaeder*. Meanwhile, Earle kept the books and records secret and kept Spaeder from looking into the partnerships' finances. Earle did not show Spaeder any correspondence between the partnerships and the bank, including letters showing unauthorized transactions and fraud. Earle also lied to Spaeder about the partnerships' financial troubles, watching Spaeder go down with the sinking ship as he struggled to patch the holes with his own money.

3. *Rhoads*. Shaking the piggy bank upside down eventually left Pottstown under-collateralized. This alarmed the regulators at the Federal Deposit Insurance Corporation; they soon came knocking. So Parke Bank and Spaeder hatched a scheme to use Rhoads to evade the regulators' scrutiny.

The bank told Spaeder that it would either force the Pottstown loan into default or make Rhoads sign security agreements with the bank to cover Pottstown's collateral shortfall. Spaeder chose the latter option on one condition: that the bank not record or enforce these security agreements. The bank promised to "rip [the security agreements] up once the feds left." App. 1104–05.

That was a lie. After showing the agreements to the regulators, the bank recorded them. And it later enforced them against Rhoads.

4. *Shea*. Earle needed someone to guarantee a line of credit for his other business ventures. He could not do so personally without violating lending-limit regulations, so he searched for someone else. Parke Bank recommended that he ask John Shea, who was already involved in the partnerships' real-estate business.

4

To sweeten the deal, the bank promised Shea that Earle and his wife, not Shea, would be on the hook for the line of credit. After some convincing, Shea agreed to guarantee Earle's line of credit.

But the bank had lied again. It intended the guaranty agreement to bind Shea and levied sham fees against him without notice. And it later enforced the guaranty agreement against Shea.

## B. Procedural history

1. *State court*. Spaeder's and Earle's relationship eventually reached a breaking point, as did their business. Around that time, Pottstown and Peckville defaulted on their loans. This made Parke Bank skittish, so it used Pennsylvania state courts to salvage money from the sinking business.

Parke Bank got confessed judgments against Pottstown, Peckville, and Rhoads in Pennsylvania state court to collect outstanding loans and the collateral for the Pottstown loan. In response, the three partnerships petitioned to open the confessed judgments. Pottstown and Peckville argued that they need not pay up because Parke Bank had misapplied loan proceeds and mismanaged their funds. Rhoads raised similar arguments, but specifically attacked the judgment based on Parke Bank's fraud. According to Rhoads, the bank had fraudulently induced Rhoads to sign security agreements by promising not to record or enforce them. The state court ruled for the bank and struck all three petitions.

Parke Bank also sued Shea for breach of contract in Pennsylvania state court to collect the balance of Earle's line of credit. Shea counterclaimed that the bank had committed

fraud. According to Shea, the bank had misrepresented that the guaranty would not actually bind him. The state court again ruled for the bank and ordered Shea to pay up.

2. *Federal court.* The four partnerships, Shea, and Spaeder sought a second chance in federal district court. They filed this suit against Parke Bank and its employees under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§1961–1968, alleging that the bank, its employees, and Earle had formed an enterprise to defraud them. They also alleged state-law claims for fraud, conversion, and civil conspiracy.

But the District Court dismissed all their claims. The Court properly took judicial notice of state-court judgments. *See Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016). And it barred the federal claims of Pottstown, Peckville, Rhoads, and Shea under claim preclusion. *Devon Drive Lionville, LP v. Parke Bankcorp, Inc.* (*Devon Drive II*), No. 15-3435, 2017 WL 5668053, at *19, *21 (E.D. Pa. Nov. 27, 2017). Despite that dismissal, the three partnerships and Shea kept litigating the case as if they were still in it. *Devon Drive Lionville, LP v. Parke Bancorp, Inc.* (*Devon Drive III*), No. 15-3435, 2018 WL 3585069, at *2 (E.D. Pa. July 26, 2018). The Court then dismissed Lionville's and Spaeder's federal claims on the merits for lack of RICO standing. *Id.* at *6. And it declined to exercise supplemental jurisdiction over the remaining state-law claims. *Id.* at *7. In the alternative, it dismissed the complaint for ignoring the court's directives. *Id.* (relying on Fed. R. Civ. P. 41(b)).

The partnerships, Shea, and Spaeder now appeal. We review the District Court's claim-preclusion ruling and dismissal on the merits de novo. *Elkadrawy v. Vanguard Grp., Inc.*,

584 F.3d 169, 172 (3d Cir. 2009) (claim preclusion); *Bruni v. City of Pittsburgh*, 824 F.3d 353, 360 (3d Cir. 2016) (12(b)(6) dismissal on the merits).

## II.  RHOADS'S AND SHEA'S CLAIMS ARE PRECLUDED

We give state-court judgments the same preclusive effect that the state's own courts would. 28 U.S.C. § 1738; *Turner v. Crawford Square Apartments III, L.P.*, 449 F.3d 542, 548 (3d Cir. 2006). Under Pennsylvania law, claim preclusion bars litigants' claims if their first and second suits involve (1) the same issues, (2) the same cause of action, (3) the same parties, and (4) the same quality or capacity of the parties. *Daley v. A.W. Chesterton, Inc.*, 37 A.3d 1175, 1189–90 (Pa. 2012).

Under the most generous reading, Rhoads and Shea challenge only the first element: the state and federal claims, they say, did not raise the *same issues*. But they did.

### A.  Rhoads's claims are precluded

Rhoads challenges claim preclusion on only two grounds: First, it says, its petition could not have opened the confessed judgment. Second, it asserts, the doctrines of adverse domination and fraudulent concealment should bar claim preclusion. These two arguments fail. And it forfeited any other arguments.

1. *Opening the confessed judgment*. Pennsylvania lets a party petition to open a confessed judgment. Pa. R. Civ. P. 2959; *see J.M. Korn & Son, Inc. v. Fleet-Air Corp.*, 446 A.2d 945, 946 (Pa. Super. Ct. 1982). If the petition states prima facie grounds for relief, the state court must open the judgment and may stay the proceedings. Pa. R. Civ. P. 2959(b). The petition, however, must spell out what it challenges; parties "waive[] all defenses and objections which are not included in the petition or answer." *Id.* 2959(c).

7

But petitions cannot, in the absence of fraud, open claims if the claims asserted are unliquidated. *See Hopewell Estates, Inc. v. Kent*, 646 A.2d 1192, 1195 (Pa. Super. Ct. 1994); *J.M. Korn*, 446 A.2d at 462. In other words, the claims must allege either that the underlying agreement is void (because of fraud, for instance) or that the damages are certain and definite. *J.M. Korn*, 446 A.2d at 947 (fraud); *Hellam Twp. v. DiCicco*, 429 A.2d 1183, 1186 (Pa. Super. Ct. 1981) (certain and definite damages).

Rhoads's claims were the sort that could have opened the confessed judgment because they alleged fraud. In its petition, Rhoads claimed that Parke Bank had induced it to sign the security agreements by fraud. The bank allegedly lulled Rhoads into a false sense of security by promising not to record or enforce the security agreements. These are exactly the kind of fraud claims for which Pennsylvania state courts can open confessed judgments. *See Nadolny v. Scoratow*, 195 A.2d 87, 89 (Pa. 1963) (citing *Berger v. Pittsburgh Auto Equip. Co.*, 127 A.2d 334, 335–37 (Pa. 1956)) (opening to allow question of fraud to go to a jury). The state court could have opened the confessed judgment based on fraud. It did not do so because it found that Rhoads's claims lacked merit.

2. *The doctrines of adverse domination, fraudulent concealment, and the discovery rule*. Rhoads makes a last-ditch effort to save its claims by asking us to extend three timeliness doctrines, called adverse domination, fraudulent concealment, and the discovery rule, to claim preclusion as well. The gist of its argument is that Earle's control over Rhoads, as well as Parke Bank's fraud, kept Rhoads from discovering its own fraud claims.

Rhoads admits, however, that the three doctrines only toll or delay the running of statutes of limitations. It cites no Pennsylvania decision that has extended any of these doctrines to bar claim preclusion. Even if the doctrines could apply in theory, they do not fit here. They would save only claims that were *not* asserted because of control or fraud. But here, Rhoads did manage to assert its own fraud claims in its state-court petition. Neither control nor fraud kept it from doing so. Thus, none of these defenses fits these facts.

### B. Shea's claims are precluded

Shea argues that his claims cannot be precluded because counterclaims in Pennsylvania are only permissive, not mandatory. Not so.

While Pennsylvania's Rules of Civil Procedure do not provide for mandatory counterclaims, its courts do. *Compare Martin v. Poole*, 336 A.2d 363, 367 (Pa. Super. Ct. 1975), *with Del Turco v. Peoples Home Sav. Ass'n*, 478 A.2d 456, 463 (Pa. Super. Ct. 1984) (adopting Restatement (Second) of Judgments § 22 (1980)). So in Pennsylvania, claim preclusion applies "not only to claims that *were* made but also to claims that *could have* been made." *Stuart v. Decision One Mortg. Co.*, 975 A.2d 1151, 1152 (Pa. Super. 2009). And it applies fully when a party chooses to bring a counterclaim. *Hunsicker v. Bearman*, 586 A.2d 1387, 1390 (Pa. Super. Ct. 1991). Shea had to raise his counterclaims, he did raise them, and the state court dismissed them. And for the same reasons Rhoads's claims fail, adverse domination, fraudulent concealment, and the discovery rule cannot save Shea's claims either. His federal claims are thus precluded.

### III. A FRAUD'S INFLUENCE ON FEDERAL REGULATORS IS NOT A PROXIMATE CAUSE OF HARM AND SO CANNOT SUPPORT RICO STANDING

The remaining appellants (Pottstown, Peckville, Lionville, and Spaeder) fail to state a claim for relief. On appeal, they raise only one proximate-causation theory to support RICO standing: the regulators relied on the bank's fraud, and that reliance caused their injuries. But that theory fails, so they cannot survive a motion to dismiss.

To be clear, the District Court dismissed Pottstown and Peckville because their claims were precluded.[†] But because they kept litigating their RICO claims as if they were still parties to the case, we will treat them as such. After all, "we can affirm for any reason in the record." *Blake v. JP Morgan Chase Bank NA*, 927 F.3d 701, 705 (3d Cir. 2019). So even if the District Court erred in dismissing Pottstown and Peckville under claim preclusion, we can affirm the dismissal on other grounds. And because they too lack standing to bring RICO claims, we need not address whether their claims were precluded.

Standing comes in several varieties, and plaintiffs must satisfy all that apply. Some standing is constitutional, required by Article III. Some is prudential. And some is required by the particular statute at issue, like RICO. *Maio v. Aetna, Inc.*, 221 F.3d 472, 482–83 (3d Cir. 2000). RICO provides a private cause of action only for those who are "injured … by reason of" a RICO violation. 18 U.S.C. § 1964(c). That requires that the defendant be both the *but-for* and the *proximate* cause of the plaintiff's injury. *Bridge v. Phx. Bond & Indem.*

---

[†] Judge Jordan would base our decision on Pottstown's and Peckville's claims not on standing but rather on preclusion. He would hold that Pottstown's and Peckville's claims are precluded for the same reasons that Rhoads's are. *See supra* section II.A.1.

*Co.*, 553 U.S. 639, 654 (2008); *Maio*, 221 F.3d at 483. Only proximate causation is at issue here.

Under RICO, proximate causation requires "some direct relation between the injury asserted and the injurious conduct alleged." *Holmes v. Secs. Inv'r Prot. Corp.*, 503 U.S. 258, 268 (1992). Though it requires reliance, the reliance need not be by the plaintiff himself: usually, a plaintiff must show "that *someone* relied on the defendant's misrepresentations." *Bridge*, 553 U.S. at 657–58. And if fraud harms the plaintiff only indirectly and other factors may have caused that harm, there is no proximate causation. *See Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 457–60 (2006).

The remaining appellants charge that the FDIC relied on Parke Bank's misrepresentations about the sham fees, the state of the loans, and the legitimacy of the transactions. Fraudulent representations to a third party, they claim, can support RICO standing.

Not here. Under their theory, the direct victims are the regulators, not appellants. And the regulators are also intervening actors who break the chain of causation.

The Supreme Court has rejected similarly remote theories of proximate causation. Consider these two scenarios: First, a party defrauds a tax authority and uses the proceeds to lower its prices and undercut its competitors. *Anza*, 547 U.S. at 457–58. Second, a party defrauds a state government by not reporting some sales information, and without this information a city government cannot track down the people who never paid taxes on those sales. *Hermi Grp., LLC v. City of N.Y.*, 559 U.S. 1, 9 (2010). In both scenarios, the harm is separate from the fraud. The fraud was perpetrated on the tax authority and state govern-

11

ment. But the harm alleged was suffered by different parties: competitors and city government. So in both scenarios, those harms are too attenuated and distant from the reliance to show proximate causation. *Anza*, 547 U.S. at 458–59; *Hermi*, 559 U.S. at 10. So too here.

Appellants did not preserve any other theory of proximate causation. Only after oral argument did they assert that Spaeder has standing as the general partner in charge of the limited partnerships to file lawsuits on their behalf. Under this theory, Spaeder may be a "real party in interest" as a general partner. Fed. R. Civ. P. 17(a)(1). Yet he, like the partnerships, would still lack RICO standing. But we need not consider this theory or any other because appellants have forfeited them; we see no "exceptional circumstances" here to justify overlooking that forfeiture. *Brown v. Philip Morris Inc.*, 250 F.3d 789, 799 (3d Cir. 2001).

\* \* \* \* \*

In short, all of appellants' claims are either precluded or barred by lack of RICO standing. So we need not address whether the District Court was right to dismiss, in the alternative, appellants' remaining claims under Federal Rule of Civil Procedure 41(b). We will thus affirm.